**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-00797-RM-BNB

FORTE SUPPLY, LLC, a Colorado Limited Liability Company, and
JEFF RESNICK, a resident of the state of Colorado, in his official capacity,

    Plaintiffs,

v.

MOJO FROZEN YOGURT, LLC, a New Jersey Limited Liability Company, and
THOURIA IBRAHIM, a resident of the state of New Jersey,

    Defendants.

---

**ORDER DENYING
DEFENDANTS' MOTION TO CHANGE VENUE AND TO DISMISS (ECF NO. 17)**

---

THIS MATTER is before the Court on Motion to Change Venue and to Dismiss ("Motion") (ECF No. 17) filed by Defendants Mojo Frozen Yogurt LLC ("Mojo") and Thouria Ibrahim ("Ibrahim") (collectively, "Defendants"). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**I. BACKGROUND**

This case arises from Defendants' alleged actions taken after they purchased yogurt machines from Plaintiffs. In their Complaint, Plaintiffs alleged the following. Plaintiff Forte Supply LLC ("Forte") is a Colorado limited liability company and Plaintiff Jeff Resnick ("Resnick") is Forte's owner and a Colorado resident. Plaintiffs' business – store – is located in Colorado. (Complaint ¶¶ 1-2 & Ex. 6.) Mojo is a New Jersey limited liability company and Ibrahim is Mojo's owner and a New Jersey resident. (Complaint ¶¶ 4-5.)

In 2012, Defendants contacted Plaintiffs in Colorado to purchase four yogurt machines for use in New Jersey. (Complaint ¶¶ 8-9 &16.) On June 4, 2012, the parties entered into a purchase agreement for the purchase and sale of four machines, each of which came with a warranty.[1] (Complaint ¶¶ 16-18.) The transaction was consummated in Colorado. (Complaint ¶ 8.)

Soon after the purchase, Defendants contacted Plaintiffs with complaints about the machines. (Complaint ¶ 19.) Plaintiffs sent three local, *i.e.*, New Jersey, service providers to check the machines and found no problems. (Complaint ¶¶ 16, 17 & 20.) Defendants continued to experience problems and contacted Plaintiffs again. Resnick traveled to New Jersey twice to inspect the machines but concluded there were no problems with the machines. (Complaint ¶¶ 20-21.)

Thereafter, Defendants engaged in a number of actions directed at Plaintiffs. In January and February 2013, Ibrahim contacted a potential client of Forte, accused Plaintiffs of selling faulty machines, and stated the legal action against Plaintiffs was imminent. (Complaint ¶ 22 & Exhibit [Ex.] 5.) Defendants notified Plaintiffs via e-mail that Defendants would continue to make negative reports concerning Plaintiffs until they provided a refund on the machines. (Complaint ¶ 10 & Exs. 3 & 5.) Defendants told Plaintiffs to "[w]atch out for more negative reports." (Complaint, Ex. 3.) Defendants made other threats to file suit against Plaintiffs. (Complaint ¶¶ 10-11.)

---

[1] Defendants argued they signed no paperwork and received no bill of lading or bill of sale but provided no affidavit to contradict Plaintiffs' allegations; therefore, at this stage, such allegations are assumed true. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 & 1076 (10th Cir. 2008) ("*Dudnikov*").

On March 13, 2013, Ibrahim posted a negative review concerning Plaintiffs on "Yelp," an online review website. The review identified that Plaintiffs were located in Colorado and showed a picture of Plaintiffs' storefront. (Complaint ¶ 24 & Ex. 6.) Also in March 2013, Defendants filed a complaint against Plaintiffs with the Colorado Consumer Protection Unit, which was investigated by the Colorado office of the Better Business Bureau ("BBB"). (Complaint ¶ 10 & Ex. 2) Defendants' complaint is posted publicly on the BBB's website. (Complaint ¶ 10.) Defendants' actions were taken with the sole purpose of ruining Plaintiffs' Colorado based business, causing lost business and damaging their business reputation. (Complaint ¶ 10.)

As a result of Defendants' alleged actions, Plaintiffs filed suit before this Court asserting claims for: (1) Injunctive Relief and Temporary Restraining Order based on Defendants' alleged defamatory statements; (2) Intentional Interference with Contractual Relations; (3) Breach of Covenant of Good Faith and Fair Dealing; (4) Injury to Business Reputation; and (5) Defamation.  Except for the claim for breach of covenant of good faith and fair dealing, the other claims appear to be based in, or premised on a question of, tort. *E.g.*, *City of Golden v. Parker,* 138 P.3d 285, 292 (Colo. 2006); *see Wood v. New Jersey Manuf. Ins. Co.*, 206 N.J. 562, 21 A.3d 1131, 1132 (2011).

In response to Plaintiffs' Complaint, Defendants moved to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction and moved to change venue under 28 U.S.C. §§ 1404(a) and 1406(a). None of the parties filed affidavits or verified documents.

## II. ANALYSIS

**A.     Personal Jurisdiction.**

Where the court's jurisdiction is contested, the plaintiff bears the burden of establishing personal jurisdiction. *Dudnikov, supra* at 1069-1070. Where the court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction is proper. *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056-1057 (10th Cir. 2008) ("*AST Sports Science*"); *Dudnikov*, *supra* at 1069-1070. The court will take as true all well-pled facts alleged in the complaint to determine if the plaintiff has made such a showing. *Dudnikov, supra* at 1070.

Colorado's long-arm statute extends jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment, thereby obviating the need for a long-arm statutory analysis separate from the due process inquiry. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005); *AST Sports Science, supra* at 1057. In order to determine whether the exercise of personal jurisdiction over Defendants comports with due process, the Court is required to conduct a two-step inquiry. First, do the nonresident Defendants have sufficient "minimum contacts" with Colorado that they should reasonably anticipate being haled into court here. If so, the next step is to determine whether the exercise of personal jurisdiction over Defendants offends "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted); *AST Sports Science, supra* at 1057.

Plaintiffs rely on the exercise of specific personal jurisdiction over Defendants. The parties did not break out their specific jurisdiction analysis by claim or by Defendants but treated

4

the claims and Defendants as identical in all material respects. Unlike subject matter jurisdiction, the courts are not obligated to independently assess personal jurisdiction. *See Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed.Appx. 86, 2012 WL 2855777, at * 4 (10th Cir. July 12, 2012). Accordingly, the Court will not attempt to parcel out the claims or Defendants but treat them as the parties have done.

   1.   **Specific Personal Jurisdiction.**

   *a)*   *Minimum Contacts.*  In order to meet the "minimum contacts" standard for specific jurisdiction over a nonresident defendant: (1) that defendant must have "purposefully directed" its activities at residents of the forum state; and (2) the plaintiff's alleged injuries must "arise out of or relate to" those activities. *AST Sports Science, supra* at 1058.

   *(1) "Purposeful Direction."*

Plaintiffs rely on *Dudnikov, supra* and its application of the test set forth in *Calder v. Jones*, 465 U.S. 783 (1984). Accordingly, this Court will begin its analysis there. *Calder, supra* involved an action based in tort, *i.e.*, libel, invasion of privacy, and intentional infliction of emotional harm, brought by a California resident against a writer and editor based in Florida. Applying the "effects" test, the U.S. Supreme Court found the Florida residents were subject to suit in California because California was the focal point of the story and of the harm suffered. "Distilling *Calder* to its essence," *Dudnikov, supra* at 1072, the Tenth Circuit stated that "purposeful direction" exists where there is the presence of (a) an intentional action, which was (b) expressly aimed at the forum state, with (c) knowledge that the brunt of the injury would be felt in the forum state. *Id.* at 1072.

In the context of Internet activities, however, the Tenth Circuit has held that the posting of allegedly defamatory comments or information on an internet site, without more, does not subject the poster to personal jurisdiction wherever the posting could be read or the subject of the posting may reside. *Schrader v. Biddinger*, 633 F.3d 1235, 1241 & 1244 (10th Cir. 2011). The plaintiff's residence in the forum, and suffering harm there, standing alone, are also insufficient. *Id.* at 1244. Instead, the courts look "to indications that a defendant deliberately directed its message to an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state," *id.* at 1241, or "otherwise [made] the forum state the focal point of the message," *id.* at 1244. In other words, "*the forum state itself must be the focal point of the tort.*" *Id.* at 1244 (italics in original).

In this case, Plaintiffs have sufficiently alleged intentional wrongful acts by Defendants which interfered with and harmed Plaintiffs' business, *e.g.*, Defendants intentionally posted false and negative reviews of Plaintiffs' business, and intentionally and improperly provided false and misleading statements concerning Plaintiffs.

Similarly, Plaintiffs have sufficiently alleged Defendants' intentional actions were "expressly aimed" at Colorado. Defendants are alleged to have wrongfully posted negative reviews about and filed a Colorado based BBB complaint against Plaintiffs, who Defendants knew were located in Colorado and intended their extra-forum conduct to reach Colorado. Plaintiffs obviously conducted their business nationally, if not internationally, through the Internet but their business – store – was centered in Colorado. As such, Defendants' alleged conduct would inherently have included a substantial number of forum state residents and businesses. While Defendants may have acted, *e.g.*, made the posting, in New Jersey, those

actions can be fairly characterized as intended to negatively affect Plaintiffs' business in Colorado.

Had Plaintiffs only alleged Defendants posted derogatory comments on Yelp, a geographically–neutral forum, and/or Plaintiffs had no local physical location in Colorado, a different conclusion may have been reached. Here, however, Plaintiffs also alleged Defendants did something more – they filed a complaint with the Colorado Consumer Protection Unit, causing the local Colorado BBB to act. Accordingly, neither the lack of Defendants' physical presence in Colorado nor the fact they used the Internet to effectuate their purpose negates the fact that Defendants' express aim was to affect a Colorado resident and his Colorado based business, and target a Colorado audience. *Dudnikov, supra* at 1076.

Finally, the allegations are sufficient to show Defendants knew the brunt of the injury would be felt in Colorado. As shown in the Complaint and supporting exhibits, Defendants knew Forte was a Colorado based company. Defendants' public postings and complaints are available in the United States, and presumably worldwide, but all affect Plaintiffs' Colorado business. Accordingly, this prong has also been met.

   *(2) "Arising Out Of."*

In addition to purposeful direction, the specific personal jurisdiction test requires the Court to determine whether Plaintiffs' injuries "arise out of" Defendants' forum-related activities. The Tenth Circuit stated there are potentially two tests – the "but-for" test and the "proximate cause" test – but has not yet decided which one to choose. *Newsome v. Gallagher*, 722 F.3d 1257, 1269-1270 (10th Cir. 2013).

> Under the but-for approach, any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction. The proximate cause approach, by contrast, is considerably more restrictive and calls for courts to examine whether any of the defendant's contacts with the forum are relevant to the merits of plaintiff's claim.

*Id.* at 1269-1270 (quoting *Dudnikov, supra* at 1078; internal brackets omitted).

In this case, Plaintiffs' allegations are sufficient even under the more restrictive proximate cause test. Here, Plaintiffs alleged Defendants purposely and intentionally provided false information concerning Plaintiffs' Colorado based business which caused Plaintiffs to lose business and suffer damage to their business reputation. Defendants argue Plaintiffs have shown no injury because the BBB has closed its investigation of Defendants' complaint. The issue before the Court, however, is whether it may exercise personal jurisdiction over Defendants and not whether Plaintiffs can establish their claimed injury. *See Newsome v. Gallagher, supra* at 1270-1271 (recognizing importance of keeping 12(b)(2) and 12(b)(6) analyses distinct).

Defendants also argue their "one isolated purchase of defective goods from a business in Colorado" and "appropriate contacts with Colorado's Better Business Bureau" regarding that one purchase are insufficient. Defendants, however, ignore the allegations concerning their contacts with Plaintiffs in Colorado arising from the servicing of the machines and their negative comments about Plaintiffs on Yelp and to a third-party. Accordingly, Defendants' argument is unavailing.

   **b)**  ***Fair Play and Substantial Justice.*** Where a plaintiff satisfies its minimum contacts burden, the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would nonetheless "offend traditional notions of fair play

and substantial justice." *Newsome v. Gallagher, supra* 1271 (quoting *Dudnikov, supra* at 1080; quotation marks omitted). Five factors to consider are: "(1) the burden on defendant[;] (2) the forum state's interest in resolving the dispute[;] (3) the plaintiff's interest in receiving convenient and effective relief[;] (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies[;] and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* at 1271 (quoting *Omni Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d. 1086, 1095 (10th Cir. 1998) ("*Omni*")).

### *(1) "Burden on Defendants."*

Defendants argue the burden on them is "extreme" as the technicians who attempted to repair the machines are in New Jersey and the person to whom they allegedly provided false information lives in "the New Jersey area," *i.e.*, Pennsylvania; therefore, all are beyond the subpoena power of this court. Defendants also argue they would be "run out of business" if they must defend the allegations in Colorado, nearly two thousand miles away. Plaintiffs did not dispute the location of the witnesses but contend that videotaped depositions are available. Plaintiffs also assert that it would be unreasonable and inconvenient for them to litigate a case two thousand miles away based on Defendants' actions.

"[M]odern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (internal quotation marks omitted). The Court finds that traveling from New Jersey to Colorado will impose some burden on Defendants, but not unduly so as "in any case in which the parties reside in different fora, one side must bear the

inconvenience of litigating 'on the road.'" *Dudnikov, supra* at 1081.  Further, while New Jersey or Pennsylvania witnesses may be beyond the subpoena power of this Court to compel them to appear in Colorado, Defendants have not shown that all of such witnesses would be unwilling to appear absent a subpoena.  Defendants have also failed to establish their defense would be burdened by presenting the testimony of such non-Colorado witnesses by other than live testimony.  Accordingly, this factor does not weigh definitively in Defendants' favor.

*(2) "The Forum State's Interest in Resolving the Dispute."*

Defendants argue that if they prevail, the impact on Colorado would be minimal, as only one relatively small company is involved and because Plaintiffs' damages are "highly speculative."  Defendants further contend that, while Colorado admittedly has an interest in protecting its citizens from legal harm, New Jersey's interest in protecting its citizens from frivolous lawsuits outweighs Colorado's interests.  Plaintiffs counter that Colorado has an interest in providing residents with a forum to resolve disputes where out-of-state actors have caused residents injuries, regardless if the residents offer their products nationally.  This Court agrees.  As previously stated, the issue before this Court is whether specific personal jurisdiction exists not whether Plaintiffs may ultimately win or lose their lawsuit.  Further, Colorado has an important interest in providing a forum for Colorado residents and businesses to seek redress for injuries caused by out-of-state actors.  *See AST Sports Science, Inc., supra* at 1062.  Accordingly, Defendants have not shown this factor weighs in their favor.

*(3) "The Plaintiff's Interest in Receiving Convenient and Effective Relief."*

"'This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or

because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit.'" *Newsome v. Gallagher, supra* at 1273 (quoting *OMI, supra* at 1097). Defendants argue that in the unlikely event that Plaintiffs prevail, they would have a greater ability to secure relief in New Jersey as Defendants have no assets in Colorado. Plaintiffs respond they are fully capable of registering any judgment in the United States District Court for the District of New Jersey. The burden is on the Defendants and they have not shown whether Plaintiffs may receive convenient and effective relief in New Jersey.

> (4) "The interstate judicial system's interest in obtaining the most efficient resolution of controversies."

The focus of the inquiry here are "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation.'" *Newsome v. Gallagher, supra* at 1274 (quoting *Omni, supra* at 1097).

First, Defendants asserted, and Plaintiffs did not dispute, that the majority of witnesses are located in New Jersey. Next, the wrong underlying the lawsuit occurred in Colorado. As previously discussed, while Defendants' actions complained of were taken in New Jersey, they were directed to and allegedly injured Plaintiffs in Colorado.

As to what forum's substantive law governs, "[i]n a diversity action, a federal district court must apply the substantive law of the state in which it sits…including principles regarding choice of law." *Vandeventer v. Four Corners Elec. Co., Inc.*, 663 F.2d 1016, 1017 (10th Cir. 1981). Therefore, Colorado's choice of law principles applies. Colorado applies the "most significant relationship" approach under the Restatement (Second) for contract and tort actions. *See Wood Bros. Homes, Inc. v. Walker Adj. Bureau*, 198 Colo. 444, 601 P.2d 1369, 1372 (1979).

At this stage, the burden is on Defendants to show this factor weighs against the exercise of personal jurisdiction. Defendants did not address this factor in their personal jurisdiction analysis but did so in their request for a change of venue, which this Court has considered. Defendants argue that New Jersey law would apply as their alleged tortious actions took place in New Jersey. Nonetheless, they argue the common law legal issues are "relatively straightforward," which diminishes the importance of having a local court decide local law. Plaintiffs argue Colorado law applies and Defendants have not shown whether the two forums interpret common law principles the same way. They also assert that even if New Jersey law applied, that could be looked up on the Internet. The parties have provided insufficient information on this issue as to the likelihood that New Jersey versus Colorado law would apply. Nonetheless, it is Defendants' responsibility to make a showing and, at this juncture, they have not done so.

Finally, on the question of whether jurisdiction is necessary to prevent piecemeal litigation, Defendants also did not address this factor. Presumably, Plaintiffs could bring suit in New Jersey if this Court were to dismiss Defendants.

In sum, Defendants have not shown this Court that the sub-factors favor a forum other than Colorado. On balance, this factor is neutral.

> *(5) "The Shared Interest of the Several States in Furthering Fundamental Substantive Social Policies."*

This factor focuses on whether the exercise of personal jurisdiction affects the substantive social policy interests of other states or foreign nations. *AST Sports Science, Inc., supra* at 1062. Here, this factor favors Plaintiffs as Defendants have not shown how the exercise of personal

jurisdiction by Colorado would interfere with any substantive social policies of New Jersey, or how the litigation of this action in New Jersey would advance such policies, if any.

### c) *Exercise of Specific Jurisdiction Would Be Reasonable.*

This Court may properly exercise specific personal jurisdiction over Defendants. Plaintiffs have made a prima facie showing that Defendants had minimum contacts with Colorado. Defendants have not met their burden of showing that the exercise of jurisdiction by Colorado over them would offend fair play and substantial justice, *i.e.*, is unreasonable. None of the factors, separately or in combination, weighs definitively in favor of Defendants.

**B.     Improper Venue.**

Pursuant to 28 U.S.C. § 1406(a), the district court "in which is filed a case laying venue in the wrong ...district shall dismiss, or if it be in the interest of justice, transfer such case to any district...in which a case could have been brought." As relevant to this case, in an action based on diversity, venue lies in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). Under this provision, "venue is not limited to the district with the *most* substantial events or omissions." *Employers Mutual Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) (italics in original).

The court conducts a two-part analysis to determine whether venue is proper. First, the court examines the nature of plaintiff's claims and acts or omissions underlying those claims. Secondly, the court determines whether substantial events material to those claims occurred in the forum district. *Id.* at 1166.

In this case, Defendants argue venue is improper because the machines malfunctioned in New Jersey; they made comments, spoke with the BBB, and contemplated litigation in New

Jersey; and their attorney who is a witness regarding the alleged threats of litigation is also in New Jersey. This Court is not persuaded such factors show venue in Colorado is improper.

First, *where* the machines malfunctioned does not serve as a basis for Plaintiffs' claims. Instead, as argued by Plaintiffs, it is Defendants' alleged intentional actions in reaching into Colorado and contacting the Colorado BBB, hindering future relations with Colorado customers, and threatening Plaintiffs with litigation which serve as the bases for Plaintiffs' claims. As previously discussed, the fact that Defendants' alleged acts physically occurred in New Jersey does not, in the context of this case, support a finding that such actions are not significantly connected to Colorado.

**C.     Change of Venue.**

Defendants' request for a change of venue under 28 U.S.C. § 1404(a) requires the Court to weigh the following factors: (a) the plaintiff's choice of forum; (b) the accessibility of witnesses and other sources of proof; (c) the cost of making the necessary proof; (d) the enforceability of a judgment if one is obtained; (e) relative advantages and obstacles to a fair trial; (f) difficulties that may arise from congested dockets; (g) the existence of any questions arising in the area of conflict of laws; (h) the advantage of having a local court determine questions of local law; and (i) other considerations of a practical nature that make a trial easy, expeditious and economical. *See Employers Mutual Cas. Co. v. Bartile Roofs, Inc., supra* at 1167. The burden is on Defendants to establish that the existing forum is inconvenient. *Id.* at 1167. The mere shifting of inconvenience from one side to the other side is not a permissible justification for a change of venue. *Id.* at 1167.

### 1. Plaintiffs' Choice of Forum.

"Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 1167-1168 n.13 (quoting *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir. 1992); internal alteration and quotation marks omitted). The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in this district or where the facts giving rise to the lawsuit have no material relation or significant connection to the chosen forum. *Id.* at 1168. Such facts are not present here. In this case, Plaintiffs are a Colorado resident and his Colorado company. Further, Plaintiffs' claims, as alleged, are based on Defendants' actions taken against and directed to Plaintiffs in Colorado seeking to harm their Colorado based business. Such allegations show the facts giving rise to this action are materially related or have a significant connection to Colorado. Accordingly, this factor weighs against transferring this action.

### 2. Accessibility of Witnesses and Sources of Proof.

The convenience of witnesses is the most important factor. "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses [are] unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id.* at 1169 (internal alterations and brackets omitted).

As previously discussed, Defendants have identified four witnesses located in New Jersey – the three technicians and Defendants' former attorney. Defendants assert, without any support, that, absent compulsory process, such witnesses are "unlikely" to testify at trial or deposition, particularly in Colorado, and that nearly all of Defendants' witnesses are beyond this Court's

power to compel their cooperation. Defendants also contend the videotaped testimony of such witnesses at trial is a "pale substitute" for live testimony. On the other hand, Plaintiffs argue, also without evidentiary support, they have business relationships with the three technicians who "may very well be willing to travel to Colorado." Plaintiffs also represented they would make arrangements for the technicians to provide their testimony, "in whatever form it takes."

Defendants' unsupported assertions do not demonstrate the requisite inconvenience to the witnesses. First, as to Defendants' prior attorney, the Court finds it difficult to believe that such attorney would require her former clients to compel her to appear to testify at her deposition or trial. Second, in light of the limited nature of her anticipated testimony, the Court is not persuaded that her videotaped deposition or "live" testimony through videoconferencing would be insufficient. As for the three technicians, Plaintiffs' allegations, which are presumed true at this stage, that they sent the three technicians to examine/service the machines, and paid for the same, support a fair inference that Plaintiffs have a business relationship with these individuals. Nonetheless, they too have insufficiently shown that such individuals would willingly appear in Colorado. Nonetheless, Defendants' speculation that such witnesses are "unlikely" to testify at trial or deposition is insufficient to demonstrate the requisite inconvenience to such witnesses. *See Scheidt v. Klein, supra* at 966.

Defendants also point to the fact that the machines are located in New Jersey and that testing should be done where they were supposed to be operated – in New Jersey. Plaintiffs assert they wish to test the machines at their place of business, by their technicians and under video surveillance, and would bear the cost of transporting the machines back to Colorado.

The Court finds the fact that the machines are located New Jersey is a neutral consideration because, if Defendants wish to conduct any testing, it can do so there but that does not preclude Plaintiffs from also testing the machines. Assuming the actual machines are necessary at trial, Defendants have not shown why such "bulky" machines could not be shipped to Colorado as they had been shipped to Defendants in New Jersey. Accordingly, Defendants have not demonstrated this factor weighs in favor of a transfer.

### 3. Cost of Making the Necessary Proof.

The cost of making the necessary proof weighs in favor of a transfer. Here, the three technicians are located in New Jersey as are the machines. Even assuming, as Plaintiffs assert, the technicians may be willing to travel to Colorado for trial, the cost for doing so is higher than if the case was heard in New Jersey. There is also the additional cost of shipping one or more of the machines to Colorado, even if Plaintiffs are willing to bear the costs. Thus, this factor weighs in favor of a transfer.

### 4. Enforceability of any Judgment.

This factor is neutral. As Defendants concede, a federal judgment would be equally enforceable regardless of the issuing court. Defendants' argument that enforcement would be easier in New Jersey because Plaintiffs would have to docket a Colorado judgment or settlement in New Jersey before they could enforce does not tip the balance in Defendants' favor.

### 5. Relative Advantages and Obstacles to a Fair Trial.

Defendants argue witnesses would be difficult to secure and the production of evidence "would be nearly impossible." As previously discussed, Defendants have failed to establish the witnesses identified could not be secured. As for the machines, again, while it may be more

expensive to have them shipped to the Colorado courthouse rather than to the New Jersey courthouse, Defendants have failed to explain why it would be "nearly impossible" to do so. Therefore, this factor is neutral.

### 6. Difficulties that May Arise from Congested Dockets.

Defendants concede docket congestion favors Colorado but argues it is a minor consideration because the difference is either one month shorter (from filing to non-trial disposition) to 12 months shorter (from filing to trial) in Colorado. This factor, however "minor," weighs slightly against a transfer to New Jersey.

### 7. Conflict of laws.

As discussed above, the record is unclear as to which state's laws would apply. Moreover, Defendants have argued that the legal issues are "relatively straightforward." Thus, it would appear this would be a neutral factor.

### 8. Local court to Determine Questions of Local Law.

For the reasons stated regarding the conflicts of law issue, this factor also appears to be neutral.

### 9. Other Considerations for an Easy, Expeditious and Economical Trial.

Plaintiffs assert there are obstacles to a fair trial in New Jersey by summarily stating that witnesses they would call to testify would be difficult to secure and "possibl[y] other obstacles." Such conclusory statements are insufficient. Nonetheless, in sum, based on the record before the Court, Defendants have failed to show this case should be transferred to New Jersey.

## III.  CONCLUSION

Plaintiffs have met their burden of establishing personal jurisdiction over Defendants, but Defendants have failed to show venue in Colorado is improper or that this case should be transferred.  The Court recognizes Defendants will suffer some burden and inconvenience in litigating in Colorado.  Nonetheless, on the record before this Court, Defendants' alleged actions toward Plaintiffs, citizens and residents of Colorado, over the Internet or otherwise gave rise or were sufficiently related to Plaintiffs' claims to make the exercise of jurisdiction – and the determination of Plaintiffs' case here – reasonable and fair.  Accordingly, it is therefore

ORDERED that Defendants' Motion (ECF No. 17) is DENIED.

DATED this 30th day of September, 2013.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge